IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES ELIAH DICKSON,                )
                                    )
            Plaintiff                )        Case No. 1:20-cv-0001 (Erie)
                                    )
                                    )        RICHARD A. LANZILLO
vs.                                 )        UNITED STATES MAGISTRATE JUDGE
                                    )
                                    )        MEMORANDUM OPINION AND
PAUL A. ENNIS, et al.,              )        ORDER ON DEFENDANTS' MOTION
                                    )        TO DISMISS
            Defendants              )
                                    )
                                    )        ECF NO. 15

I.      Introduction

        Plaintiff James Eliah Dickson ("Plaintiff" or "Dickson"), at all relevant times, was a prisoner

incarcerated at SCI-Albion.  Acting pro se, Plaintiff instituted this civil rights action against

Defendants Deputy Paul Ennis, Deputy Bryan E. Flinchbaugh, Major Patricia Thompson, and

Security Lieutenant Floyd (collectively "Defendants") seeking monetary relief.  ECF No. 7.  Dickson

alleges that Defendants violated the Eighth and Fourteenth Amendments of the United States

Constitution.  *Id.*  Defendants thereafter moved to dismiss his complaint arguing, in relevant part,

that Plaintiff failed to exhaust his administrative remedies.  ECF Nos. 15-16.  The Court next

ordered Dickson to respond to the motion cautioning that the Court may "treat the pending motion

as a motion for summary judgment."  ECF No. 18 (citing *Renchenski v. Williams*, 622 F.3d 315 (3d

Cir. 2010)).  After requesting an extension of time, Plaintiff responded on March 17, 2021.[1]  ECF

Nos. 26-27.  For the reasons that follow, Defendants' motion will be GRANTED.

---

[1] Dickson responded by filing a motion for summary judgment.  ECF No. 27.  Although the Court denied the motion without prejudice for failure to comply with LCvR56(b), the Court stated it would "consider the arguments raised therein in opposition to Defendants' pending motion to dismiss, to the extent they are relevant."  ECF No. 28.

1

II.     Legal Standards

Like the statute of limitations, the failure to exhaust administrative remedies is an affirmative defense. *McPherson v. United States*, 392 Fed. Appx. 938, 943 (3d Cir. 2010). "And as with the statute of limitations, dismissal under Fed. R. Civ. P. 12(b)(6) based on the failure to exhaust is appropriate only if it is apparent from the complaint that the plaintiff failed to exhaust available administrative remedies." *Escalera v. Harry*, 2016 WL 6694502, at *5 (M.D. Pa. Sept. 28, 2016) (citing *Thomas v. Brinich*, 579 Fed. Appx. 60, 62 (3d Cir. 2014)) ("While the failure to exhaust administrative remedies may form a basis for a dismissal for failure to state a claim, dismissal on that ground is appropriate only in those circumstances where the complaint reveals the exhaustion defense on its face"); *Jones v. Bock*, 549 U.S. 199, 215-216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (holding that a prisoner's failure to exhaust available administrative remedies is an affirmative defense, but noting that "that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim" and that "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract"). The Court of Appeals for the Third Circuit has held that exhaustion questions can be analyzed under Rule 12(b)(6) when they depend on "'indisputably authentic documents related to [the inmate's] grievances.'" *Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018) (quoting *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004)) (alteration in the original). Such is the case here where the Court is looking at the official grievance file.[2] *See Brown v. Wetzel*, 2019 WL 1331619, at *3 n.5 (W.D. Pa. March 25, 2019).

---

[2] The Court reiterates that it notified Plaintiff that it may convert Defendants' motion to dismiss to a motion for summary judgment. ECF Nos. 16-17. Despite filing a response to Defendants' motion, Plaintiff did not dispute the grievance record or produce evidence to counter Defendants' position. ECF No. 27. In accordance with applicable case law, the Court has considered the indisputably authentic documents attached to Plaintiff's complaint and Defendants' motion under Fed. R. Civ. P. 12(b)(6) without converting the motion to Fed. R. Civ. P. 56.

A.      Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, a court is not opining on whether a plaintiff is likely to prevail on the merits; instead, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). In making this determination, the court must accept as true all well-pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts in the complaint. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. *See also McTernan v. City of York, Pa.*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

3

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

B.      Pro Se Pleadings

For purposes of a motion to dismiss, a court must employ less stringent standards in considering pro se pleadings than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972). When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution"). Despite this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Finally, the United States Court of Appeals for the Third Circuit

4

in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim under FED. R.
CIV. P. 12(b)(6) in a civil rights case, it must sua sponte "permit a curative amendment unless such
an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

III.    Complaint

Plaintiff James Eliah Dickson was a prisoner incarcerated at SCI-Albion. ECF No. 7. He
has since been transferred to SCI-Benner. *Id.* at 1. On October 17, 2018, while confined to the
RHU-DTU at SCI-Albion, Dickson alleges that he was threatened by two inmates with the
surnames of Laboy and Stowe. ECF No. 7 ¶¶ 1-2. According to Dickson, these two inmates are
gang members and are relatives of a white woman that he killed. *Id.*

Immediately upon learning of their identity, Plaintiff notified Lieutenant Floyd. *Id.* ¶ 2.
Lieutenant Floyd advised that he would investigate whether the two prisoners were indeed relatives
of the victim and, if he determined they were, Dickson would be transferred. *Id.* A month later,
while he was still in the RHU-DTU, Deputy Flinchbaugh informed Dickson that his transfer request
had been denied. *Id.* ¶ 3. Further, Lieutenant Floyd had recommended that Plaintiff be released
into the general prison population and failure to cooperate would result in him receiving a
misconduct. *Id.* Objecting to their findings, Plaintiff sent a letter to Superintendent Michael Clark
repeating his request for a transfer. *Id.* ¶ 4; ECF No 7-1 at 4-8. Again, his request was denied, and
Superintendent Ennis responded that "[h]e [was] going to show Plaintiff . . . how he lock people like
[P]laintiff, down in the RHU . . . who kill white women." ECF No. 7 ¶ 6. Deputy Flinchbaugh
agreed asserting, "this is what you get for killing a white wom[a]n . . . You [would] be better off
hanging yourself, before the Latin Kings get you." *Id.* ¶ 7.

When Plaintiff inquired why Lieutenant Floyd had denied that Laboy and Stowe were gang
members, he responded, "At the end of the day I have bosses, . . . [and] you should have thought
about that before you killed that white woman." *Id.* ¶ 8. Because of the purported conspiracy

between Thompson, Ennis, Floyd, and Flinchbaugh that prevented him from being transferred to a safe prison and the resultant mental abuse he endured, Plaintiff began seeing the people he had killed and had suicidal ideations. *Id.* ¶¶ 12, 15.

Thereafter, Plaintiff was moved to the mental health block. *Id.* ¶ 18-29. While he was there, Unit Manager Anderson confirmed that prisoner Laboy was in fact related to the woman that Dickson had killed. *Id.* ¶¶ 22-24. Fearing for Plaintiff's safety, Unit Manager Anderson had Plaintiff's meals delivered to him and offered him assistance to request a prison transfer. *Id.* ¶¶ 28-29. During this period, Dickson was unable to retrieve the mail that had been sent to him by the Court. *Id.* ¶ 32. Plaintiff was later transferred back to the RHU, then again back to the mental health unit at Unit Manager Anderson's request, and ultimately back to the RHU. *Id.* ¶¶ 30-40. Plaintiff also asserts that Deputy Ennis called him a "nigger." *Id.* ¶¶ 40-41. He makes a similar allegation as to Major Thompson. *Id.* ¶ 55.

Dickson seeks $500,000.00 in damages. *Id.* at 16.

IV.     Discussion and Analysis

Defendants contend that Dickson's claims are barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA") because he failed to exhaust his administrative remedies despite being aware of and partially utilizing the system. ECF No. 16 at 3-9. Defendants likewise argue that Dickson "failed to exhaust any claim for monetary damages and any claims against Corrections Defendants Ennis, Thompson and Floyd because of his failure to include such claims in his grievances." *Id.* at 10. Plaintiff responds that he tried to appeal both grievances to the central office, but Defendants interfered with his mail. ECF No. 27 at 5, 12-13. To this end, he asserts that Defendants never mailed his appeal to the Secretary's Office and attaches evidence he suggests proves he substantially complied with the grievance procedures and the prison interfered with his mail. ECF Nos. 7-1; 27.

For the reasons that follow, this Court finds that Plaintiff has failed to exhaust his administrative remedies as to both grievances and as a result, will dismiss his complaint with prejudice.

A.      Failure to Exhaust

It is well-established that the PLRA, requires a prisoner to exhaust any available administrative remedies before he may bring an action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement. 42 U.S.C. § 1997e(a); *see Washington v. Gilmore*, __ Fed. Appx. __, 2021 WL 1625518, at *2 (3d Cir. Apr. 27, 2021). This exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Further, the statute requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria Cty. Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015). A procedurally defective administrative grievance, even if pursued to final review, precludes action in federal court. *Id.* Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be pleaded and proven by defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The grievance system utilized in Pennsylvania's prison system requires inmates to satisfy a three-step grievance and appeals process. *See* Grievance System Policy DC ADM-804; *Smith v. Sec. of Pa. Dep't of Corr.*, 2018 WL 279363, at *2 (W.D. Pa. Jan. 3, 2018). First, the inmate must "legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to 'initial review.'" *Smith*, 2018 WL 279363, at *2 (citing *Spruill v. Gillis*, 372 F.3d 218, 233 (3d Cir. 2004)). Second, the initial review must be appealed to the Facility Administrator for a second level of review. *Id.* Finally, "the inmate is required to file an appeal to the Secretary's Office of Inmate

Grievances and Appeals ('the Secretary's Office')." *Id.* All three stages of review must be completed before a grievance is deemed administratively exhausted for purposes of the PLRA.

DC-ADM 804 contains an additional requirement: that an inmate who "desires compensation or other legal relief normally available from a court" must "request the relief with specificity in his/her initial grievance." *See Wright v. Sauers*, 2017 WL 3731957, at *4-*7 (W.D. Pa. Aug. 30, 2017). Courts characterize the satisfaction of this requirement as "proper exhaustion." *See Smith*, 2018 WL 279363, at *3 (noting that a grievance must be fully exhausted to final review *and* "properly exhausted" with respect to remedy).[3] Pursuant to this requirement, an inmate is precluded from seeking legal relief in a lawsuit, including monetary damages, if the inmate did not request that same relief in his grievances (even if he appealed those grievances to the Secretary's Office for final review). *See, e.g., Wright*, 2017 WL 3731957, at *7 (finding lack of proper exhaustion where plaintiff failed to set forth desired monetary relief on his initial grievance form as required by DC-ADM 804); *Camacho v. Beers*, 2018 WL 6618410, at *3 (W.D. Pa. Dec. 18, 2018) (holding that, because "Plaintiff failed to request the specific relief of monetary compensation in the grievances he filed as to the subjects of this lawsuit . . . he did not exhaust all administrative remedies with regard to such claims . . . [and] may not pursue an action in federal court based on the claims raised in his procedurally defective grievances"); *Sanders v. Beard*, 2013 WL 1703582, at *6-7 (M.D. Pa. Apr. 19, 2013) (dismissing claims for monetary damages brought by plaintiffs who did not request monetary damages in their initial grievances as required by DC-ADM 804).

Because they carry the burden of demonstrating a lack of exhaustion, Defendants must establish that neither of Plaintiff's two grievances have been fully and properly exhausted in order to prevail. *See Smith*, 2018 WL 279363, at *3 ("Failure to exhaust administrative remedies is an

---

[3] Alternatively, courts in this district have occasionally characterized an inmate's failure to properly exhaust as a form of procedural default. *See, e.g., Wright*, 2017 WL 3731957, at *6 (finding a failure to specifically request monetary damages in an otherwise fully exhausted grievance as "giv[ing] rise to procedural default").

affirmative defense and, hence, the burden lies with the party asserting it.") (citing *Karpiel v. Ogg,*

*Cordes, Murphy & Ignelzi, LLP*, 297 Fed. Appx. 192, 193 (3d Cir. 2008)).

Dickson submitted his first grievance, No. 77314, on November 20, 2018, and requested

that he be transferred. ECF No. 15-1 at 2. Therein, he alleged that Deputy Flinchbaugh mentally

and emotionally abused him by ordering him to rejoin the general prison population despite his need

to be in the mental health block in order to receive proper treatment for his paranoid schizophrenia

and to avoid two gang members who wanted to kill him. *Id.* Dickson offers that he notified

Lieutenant Floyd about this issue. ECF No. 7-1 at 26. On December 11, 2018, his grievance was

denied by Grievance Officer Defendant Thompson. *Id.* at 3. The denial reads, "[t]here is no

evidence to substantiate your claims that there is a viable threat to your safety if you go to [the]

general population at SCI Albion" or that "Deputy Flinchbaugh is mentally and emotionally abusing

you." ECF Nos. 7-1 at 17; 15-1 at 3. Defendant Thompson continued, instead, the investigation

reveals that he punished you because you had been untruthful. *Id.*

Dickson appealed seven days later to the Facility Manager arguing that the underlying

investigation was ineffective and asking for clarity as to whether Laboy and Stowe were relatives of

the woman he murdered. ECF No. 15-1 at 4-5. He again requested a transfer. *Id.* The Facility

Manager upheld the grievance officer's response and advised Dickson that he could not be forced

to leave the RHU. ECF Nos. 7-1 at 28; 15-1 at 6. Dickson thereafter appealed to the Secretary's

Office on January 20, 2019. ECF No. 7-1 at 33-36. His application was deemed incomplete on

January 30, 2019 for failing to submit the required documentation. ECF No. 15-1 at 7.

Dickson submitted his second grievance, No. 834953, on November 15, 2019. ECF No. 15-

1 at 9. His second grievance raises similar claims to the first but is against Defendants Ennis and

Thompson. *Id.* He asserts that Deputy Ennis improperly concluded that there was no threat to his

safety and Thompson unfoundedly deemed his grievance frivolous. *Id.* at 10-11. As a result, he

began seeing and hearing voices of the people he killed and was afraid to retrieve his legal mail or go to the gym. *Id.* at 9-10; ECF No 7-1 at 22-23. He again requested a transfer. *Id.* His grievance was denied on December 4, 2019. ECF No. 15-1 at 11. The grievance officer found "[t]here is no evidence that your health or safety would be in danger if you were placed back into [the] population. I am denying your grievance based on these facts." *Id.*

In both grievances, the only relief Plaintiff sought was injunctive relief, i.e., a transfer to another prison. This is critical because, as discussed above, DC-ADM 804 requires an inmate who "desires compensation or other legal relief normally available from a court" to "request the relief with specificity in his/her initial grievance." *Wright*, 2017 WL 3731957; *Spruill*, 372 F.3d 218. Plaintiff's failure to request monetary compensation in either of his grievances is fatal to his request for compensatory damages in this lawsuit. *See, e.g., Wright*, 2017 WL 3731957, at *7 (finding lack of proper exhaustion where plaintiff failed to set forth desired monetary relief on his initial grievance form as required by DC-ADM 804); *Camacho*, 2018 WL 6618410, at *3 (holding that, because "Plaintiff failed to request the specific relief of monetary compensation in the grievances he filed as to the subjects of this lawsuit . . . he did not exhaust all administrative remedies with regard to such claims . . . [and] may not pursue an action in federal court based on the claims raised in his procedurally defective grievances."); *Sanders*, 2013 WL 1703582, at *6-7 (dismissing claims for monetary damages brought by plaintiffs who did not request monetary damages in their initial grievances as required by DC-ADM 804). Moreover, because Plaintiff has since been transferred to SCI Benner Township, his claims for injunctive relief have been rendered moot. ECF No. 7 ¶¶ 45-46. *See, e.g., Rosa-Diaz v. Harry*, 2017 WL 6806795, at *5 (M.D. Pa. Dec. 6, 2017) (inmate's transfer from the offending prison facility rendered his request for injunctive relief moot); *Sutton v. Rasheed*, 323 F.3d 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots

[his] equitable and declaratory claims"). In the absence of any available relief that this Court can provide, dismissal is appropriate.

Also, fatal to Plaintiff's claims is the fact that he did not fully exhaust the three-step grievance process. Concerning Grievance No. 77314, the Secretary's Office requested additional documentation on January 30, 2019. ECF No. 15-1 at 7. Plaintiff does not plead that he did not receive this request. ECF No. 7. Instead, Plaintiff pleads that his outgoing mail was intercepted and attaches Cash Slips dated September 23, 2018, September 24, 2018, January 20, 2019, and January 24, 2019 and Monthly Account Statements dated 9/1/2018 to 10/1/2018 and 1/4/2019 to 1/31/2019 as evidence of same. ECF Nos. 7 at 14; 7-1 at 31-32, 37-38; 27 at 13. However, with the exception of the latter statement, the evidence he provides precedes the Secretary's Office's request for additional documents. Furthermore, there are no factual allegations in his complaint suggesting that he in fact answered this request nor is there evidence in the record indicting that Plaintiff supplied (or attempted to supply) the Secretary's Office with the requested legible copy of his initial grievance, the initial response by the Grievance Officer, a copy of his appeal to the Facility Manager, or the Facility Manager's decision, which he needed to do in order to exhaust this grievance. *See* ECF Nos. 7-1; 15-1; 27 at 6-7, 13.

As to Plaintiff's second grievance, No. 834953, in his responsive filing, Dickson appears to concede that he did not appeal this grievance. ECF No. 27 at 6, 15. Additionally, he failed to plead in his original complaint that he tried to appeal this grievance to the Facility Administrator. ECF No. 7. Furthermore, there is nothing in the documentary record supplied by the Plaintiff and Defendants suggesting that he did. For these reasons, Plaintiff has not exhausted either of his grievances and the Court will dismiss Plaintiff's complaint.

B.      Leave to Amend is Denied as Futile

Included as part of Dickson's responsive briefing appears to be a request to amend and a proposed amended complaint.[4]  ECF No. 27 at 14-15.  Given the liberal standards afforded pro se pleadings, a plaintiff should generally be granted leave to amend before the court dismisses a claim that is merely deficient.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments given the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (citations and internal quotations omitted).  The court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.*  The court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

In the instant case, Plaintiff's allegations are clearly barred by his failure to administratively exhaust his claims.  Given same, any attempt to salvage those claims by way of amendment would be futile.  *See, e.g., Shafer v. Suloga*, 2014 WL 2041865, at *3 (M.D. Pa. May 15, 2014) (denying leave to amend where exhaustion is apparent on the face of the complaint).

V.      Conclusion

Given the foregoing, the Defendants' Motion to Dismiss (ECF No. [15]) will be granted.

An ORDER follows.

---

[4] This time he is seeking to bring a § 1983 claim for violation of his First, Fifth, Eighth, and Fourteenth Amendment rights.  ECF No. 27 at 14.

**ORDER**

Defendants' Motion to Dismiss [ECF No. 15]) is GRANTED.  Plaintiff's request for leave to amend is DENIED.  This case is DISMISSED WITH PREJUDICE.

So ORDERED this 7th day of June, 2021.

RICHARD A. LANZILLO
United States Magistrate Judge